Your Honor, may it please the Court, my name is Dan Goldberg and I represent Jerry Brown in this appeal. Mr. Brown's burglary conviction under Section 560.070 is not a violent felony, and therefore he was improperly sentenced under the ACCA. To determine whether a burglary statute satisfies the ACCA, there's a two-step analysis. If you would just start, you probably know I dissented in Naylor on the basis that the opposite result was controlled by Taylor. This is the statute at issue in Taylor. So tell me, why in your view does Taylor not control this case? With all due respect, Your Honor, I think Naylor controls. Naylor, no. Naylor involved a different statute. Naylor doesn't, if Taylor controls this statute, we follow Taylor, we don't follow Naylor. I don't care if it's an in-bank. And with all due respect, Your Honor, you obviously dissented in Naylor. It was a different statute. Right. I was extending the core of Taylor to a successor statute. Now we are dealing with a statute that was at issue in Taylor, which recognized that in many, if not most, of its permutations, it criminalized generic burglary. Why is that not controlling? Just give me a sentence, and I'll let you go on. Okay, I don't think it can be disputed that this statute encompasses non-generic burglary, and I'll tell you why. Of course. Taylor said so. And, Stitt, from last year, or last month, I should say. All I care about is Taylor. I think the Supreme, Taylor has never been overruled. The Supreme Court has had multiple permutations of how it's applied, but it decided a case involving this statute. Right, and Stitt. Why does that decision not control? Which would be, of course, that if there are Shepard documents available that establish generic burglary, end of issue, end of story. There have been cases since Taylor. One of those cases is a Mathis case, and I think it's on all fours. I believe Mathis, I know Mathis, said that this is simply a continuation of Taylor. Right, so I think the last Supreme Court's case to speak on the issue would be most enlightening. And so I think that this case is a straightforward application of the Mathis case and the Naylor case on Bonk. But the Supreme Court has said quite clearly in a number of cases that only it can overrule its own precedent. We don't have the ability to overrule their precedent, even if, and they've talked about this multiple times, even if a bunch of later cases look like they cast the reasoning of the earlier case into doubt. I think another problem with the idea that we can go to Taylor and look to Taylor, this case is on remand from the Supreme Court. And in that remand, it said specifically that this case ought to be reconsidered on Naylor, not on Taylor. And so that's the direction we've been given by the Supreme Court, is that Naylor is the opinion that I think drives the bus here. And I don't think that if we apply Naylor, then any other outcome can be reached other than the statute's indivisible. And I think there's three tools. Before we get there, I have another preliminary question. I think you have another problem with the timeliness of the petition. Now, I realize that the government didn't raise it, but under our precedent, that probably doesn't matter. So why is the motion here timely? Well, we're not dealing with a successive petition, right? Right. And so I think the government absolutely can waive that issue. They can, but we can raise it. We have case law that says we can raise it. I forget the case name, but we have case law that says we can raise timeliness on our own. Right. And I think that's the Wood case. It's a Supreme Court case. It has to be an exceptional circumstance, though. And the government hasn't maintained that there's some sort of exceptional circumstance. I'm actually arguing a similar related issue this afternoon. And the Miller case, which is a Tenth Circuit case, said that you can't raise the issue sui sponte or that it wouldn't raise the issue sui sponte because there's no exceptional circumstance. Well, my understanding of our circuit precedent is we can raise it sui sponte, but we have to give the parties an opportunity to be heard on it, whether it be briefing or whatever. But we have the ability to raise it, and we have the ability to ask for briefing on that question. Right. Absolutely. And so I guess my position would be if this court wants to do that, I'd be happy to brief it. In the meantime, I think the government has raised the issue in front of the Supreme Court. Well, let me ask you this. On the merits of that, this was filed, I think, nine years later, and your response is probably going to be, but Johnson is retroactive. The problem with that is the district court was silent on the basis, whether it used the residual clause, the enumerated offense clause, the force clause, and then it comes up on appeal to us, and we don't even touch the residual clause. We say enumerated offense clause for one, force clause on the other. And to me, then, it's impossible, almost impossible, for you then to show that the residual clause played any role whatsoever in the case. Judge, you know, honestly, this issue hasn't been flagged for argument, so I'm just not prepared to address it. Fair enough. Fair enough. Thank you. Well, that's not a timeliness. That's more substantive. Well, it is unless, yeah, unless the Walker case comes in. Right, and you have to understand Walker deals with successive petition. I think the government's been treating them differently than here. This is a first 2255, so it's an F3 issue, not an H2 issue. I think that's a distinction with the difference.  Absolutely, Your Honor. And so our claim would be that it sounds in Johnson. We've always argued it sounded in Johnson, and the government's waived expressly the defense, the Solicitor General did. Now, I don't want to push you, but going back to the Walker case, our recent Walker case, what evidence would you point to that Johnson and the residual clause was ever in play or ever even mentioned in this case? I can't find a single reference in the entire record to Johnson other than briefing on behalf of your client. And it's interesting, Your Honor. We asked for a certificate of appealability on this issue, the first issue, and that was denied. And so I thought that was a strong indication from this court that that wasn't an issue in play. And so, frankly, again, it's not something that's been briefed by the parties. It's not something that's been flagged by the court. So I would like to reserve the opportunity to brief that issue if this court were interested. What issue was the COA denied on? The timeliness issue, the F3 issue, 2255 F3 issue. And I thought that was because the government had waived, the Solicitor General's office had waived that issue before the Supreme Court. That's what was my deduction. Why would your client have asked for a COA on that negative issue? To prepare in case we wanted to have all our grounds covered. Well, we don't grant COAs on protective issues that aren't apparent. I don't understand why that would be relevant here. Well, I think why it would be relevant to me is that the government waives the issue. It hasn't been briefed. I don't know how else I can prepare for an appeal other than issues that have been flagged by the court and briefed by the parties. Counsel, I'd like to get back to why the United States Supreme Court remanded this case to us. Yes, Your Honor. I think it says in its order, if I remember correctly, clearly it's for reconsider based on this court's opinion on Naylor. And so I have to presume that that's a divisibility issue. And that's really the only issue I think that's in question in this appeal. Is the statute divisible? And I think there's three tools this court can use to determine whether or not a burglary statute's divisible. All three indicate that the statute's, in fact, indivisible. The government has maintained the statute is somehow clearly divisible. Of course, statutes can be divisible, but usually you see it in the statutory language itself, which would be the first tool I would look to. And let's say the statute punished burglarizing a building more severely than burglarizing a boat. That would be a very clear indication of divisibility of the statute. That's not this case. It punishes all the locational means identically. So I think that speaks volumes. The second tool this court ought to use is Missouri case law. And I think the Naylor primary opinion is very strong evidence of the indivisibility of statute. Naylor held that, quote, the Supreme Court of Missouri has consistently held that disjunctive alternatives to Missouri's criminal statute should be construed as listing various ways of committing a single crime. And it cites to a Missouri Supreme Court case for that. Where a Missouri statute enumerates a list of prohibited activities disjunctively, the statute creates only one crime, albeit a crime that can be committed in a variety of ways. So, Judge Locum, to address your question, this statute is phrased in the disjunctive. So I think the primary opinion of Naylor applies on all fours to this case. The government hasn't addressed this case law. Well, the question I was going to ask, I guess it's relevant now. The government says that there is no Missouri case in which the defendant wasn't charged with burglarizing a building and the shepherd documents. And that was what was proved. Or it was established there was no proof that he burgled a tent. Do you have any case to the contrary? No, Your Honor. But I think that's totally irrelevant. Well, Justice Breyer didn't think so. Well, Breyer was in dissent. Well, well. So dissents don't tell us much. He didn't. That doesn't foreclose the question. Certainly. Particularly given the Mathis analysis. Let me address the realistic probability test. And that's what it's grounded on. It's not in Mathis. It's not in Naylor. Therefore, that's in the story. Don't apply the test because there's no basis. But let's say Mathis and Naylor didn't exist, and you guys had a tabula rasa to decide the issue anew. The question is whether or not is there a realistic probability you could be penalized under the statute of burglarizing a building. Or, I'm sorry, burglarizing a boat. Absolutely. What is that realistic probability? It's the statute itself, right? What is the realistic probability? The MAI instruction 7.32, when you look at it, and it's on page 25 of my brief. Wait a minute. What Supreme Court case discussing realistic probability says that that's all within the four corners of the statute? I thought you didn't get to that inquiry unless you had to go outside the statute. No, I think under Moncrief, the Supreme Court case, I think that obviously you don't want a theoretical possibility, right? And since it's enumerated in the statute, that's not theory. I think it's the government that's hypothesizing that the statute would be enforced as written. I'm sorry. You are completely twisting the concept as far as I know. A realistic probability means you have a statute where on the face of the statute it's a theoretical possibility, but that's not enough. You have to go to the case law to establish that what a lawyer can invent as a theoretical possibility from the face of the statute is real. Right. So your argument says no, realistic probability just means I'm a lawyer and I can come up with from the face of the statute the possibility. I disagree, Your Honor. I think the MAI instruction— No, you disagree on the case law? You think Moncrief says the contrary to what I'm saying? That I think a realistic probability can be found when it's enumerated in the statute. Let's say this was a federal statute and we were interpreting it anew. Well, what do you mean by enumerated? Well, it's actually in the language. It says building, booth, tent, boat, vessel, railroad car. So we have to presume that the statute's going to be enforced as written. Well, wait a minute. Oh, come on. If it's customary for every prosecutor dealing with a statute like that to choose the location in drafting the indictment, and that's demonstrable from a study of the case law and other evidence, and, you know, the fact that you can say, yeah, but they could have said tent or canoe or building is irrelevant. I think my alternative argument would be that there is case law that interprets a predecessor statute that has the identical language, and those cases illustrate non-generic burglary is going to be prosecuted by the state of Missouri and affirmed. And I think any statute where you have an enumerated offense, the idea that you could burglarize a boat or train and get away with it under the statute. You mean 19th century statutes? I'm sorry, Your Honor? Well, this statute's quite old. You're saying the predecessor of this statute? Yes, Your Honor. So we're going to the 19th century or early 20th? No, we're still in the 20th century. The Reed case, and I cite the other cases in my book. What's the year of that? I think 40s or maybe 30s. But it doesn't much matter if it's the identical language. But you told me you agreed with the government that there's never been a case under this statute that didn't charge burglary of a building and prove burglary of a building. Under the nine years, this version of the statute was in effect. I didn't find any case law, and I want to be honest. No, I know. I mean, these are not. Can I ask one more question? Yeah. So you're saying, and I want to understand it, I think maybe Judge Loke and I might disagree about this a little bit. I think that if I'm understanding your argument, is that if there's a list here and there needs to be no inference, no assumption about boats or tents or booths or whatever else, which is sort of odd, that we're criminalized here, you don't even need a creative lawyer. You can look at the statute and say, if you tried to burglarize or rob a tent, that's obviously going to be covered here. And so it should be covered. I mean, it's obviously part of the statute. It's an alternative means for committing the offense. Yes, Your Honor. Okay. I just wanted to make sure that I was understanding your argument. Yes. That's part of the argument. And I think that, but we don't rest just on the statutory language. Wait, wait, wait. Time's up. No, no, you didn't. Complete the answer, but then. Then my instruction, really strong evidence that if you're going to go to trial and you've burglarized a boat, you're going to be punished. Because when you look at it, it's enumerated in the instruction. So I just don't see how it would be a defense to go and say, hey, judge, don't worry about this. My client's not guilty. He didn't burglarize a building. He burglarized a boat. He's innocent. How's that going to work? Thank you. One last question. Counsel, do you concede that your alternative argument regarding the sexual abuse statute is no longer valid in light of the U.S. Supreme Court's decision in the Stokeling case? No, and let me explain why. I think there's two parts of the statute, right, the way that sexual conduct is defined. The first part, I agree with you, we're going to have a really hard time winning on that one. And I will concede that. The physical force that overcomes reasonable resistance. Subsection B, though, of the statute, further defines it as a threat that places a person of reasonable fear. And it identifies a lot of different things you could fear. And one of them is kidnapping. Last week I filed a Rule 28J letter about kidnapping and how the government has conceded that kidnapping doesn't satisfy the 924C force clause. And so I think that concession in the Zimber case is on point to 566.100 because the force clause of those two, of the ACCA and 924C, are not meaningfully distinct. Thank you. That's the 28J letter? Yeah, that was filed last week. Yeah. Which relies on what wasn't argued as opposed to taking a position. That's the way you've praised it. The appellant in that case did argue. You're saying that because they argued A and didn't argue B, they conceded B. They're pretty good at defending their own interests. And I think by not defending a case and there was a Jenkins case. Did I not state correctly what your position is? Your position is because they didn't argue that in that particular Supreme Court pleading, they have conceded the issue nationwide. That's the argument. It was from the 8th Circuit. Or the 8th Circuit, whatever. Yeah. So I don't know if they conceded it nationwide, but there's a Jenkins case. You're treating a failure to argue as a concession, and I think that's simply not sound. Fair enough, Your Honor. I mean, unless you want to give me an authority that supports the notion that a failure to argue in case A is a concession in case B, I think it wouldn't take me long to find the contrary authority. And hopefully my letter didn't state that, and it could be maybe misinterpreted. Well, you highlighted that passage. I think they conceded in that case. In that case. They didn't argue it. Right. Well, fair enough. Well, our court might go ahead and do it that way anyway. Right. And there's the Jenkins case from the 7th Circuit that holds the kidnapping. Okay. Yes, that's out there. Thank you. Good morning and may it please the court. My name is Jim Kelleher. I represent the United States in this matter today. Counsel, I'm going to jump right in because this is such a clear case of lack of timeliness to me. I mean, I've looked through the record. I can't find a single reference other than in the briefing trying to raise this Johnson issue, and Walker would seem to clearly apply it. So what on earth was the United States doing? You are absolutely correct. This issue, the burglary issue, doesn't have the typical procedural history. The district court initially, or excuse me, Mr. Brown didn't initially raise the burglary as an issue in his 2255 petition. He later raised it as a pro se issue, and the court directed the parties to brief whether or not second degree burglary was generic burglary for the purposes of the Armed Career Criminal Act. It wasn't, there was no alternative there. We were simply directed to do that, and I think it would have been a pretty big overstep on my part to say, well, Judge, I'm not briefing the merits. I'm going to go ahead and say it's too late. So there was never really an opportunity for anyone to address that timeliness issue in the district court. So if we were, let me just ask the United States straight up on this. If we were to order supplemental briefing, would the United States take the position that the petition is timely and we've waived it, or would they take the position that, you know, I'd really like to assert the timeliness issue because I don't want to waste anybody's time if the panel were to decide to do that? That's another interesting question, Your Honor, because the United States Department of Justice took the position that, in terms of Johnson cases, we were not going to assert the timeliness defense if it was the defendant's first 2255 petition. Now, this case presents us with an interesting twist on that, and I've tried to get an affirmative answer from my higher-ups in terms of what I should be arguing, because this isn't truly a Johnson case on either of the two issues. It's a Curtis Johnson issue, which calls into question whether or not the second issue is timely as well. But it doesn't implicate Samuel Johnson in the least. So the answer is we don't know. You'd have to check. Correct. And I apologize because clearly, as I was going through this yet again, it occurred to me that, in terms of both issues, clearly timeliness is a major issue and probably a dispositive issue. And, of course, it would be a different story if this were a Samuel Johnson case. Then clearly retroactivity would be at issue. That's correct. All right. Thank you. That was helpful. In terms of what the Court has asked us to brief today, in terms of the Supreme Court's remand order, the broad issue is whether or not the 1969 burglary statute is divisible. The more narrow issue is whether or not there is a way to distinguish Naylor, or the statute addressed in Naylor, from the 1969 statute. And there is. I was a state practitioner for almost 10 years. I routinely charged burglaries. And when I typically charge burglaries, I charged it under the inhabitable dwelling prong, if you will, of the 1979 statute. Counsel, how is that an element and not just a means? It seems to me it's a means. Well, in terms of the 1979 statute, there is, obviously, and Naylor found that the inhabitable dwelling is such a big umbrella that it is a means. The 1969 statute, however, is a lot more clear. There's a building, there's booth, there's tent, there's railroad car. And I'm a trial attorney. I make my living arguing these cases to juries, some of whom don't even have high school educations. And if I argued, especially the 1969 burglary statute, where I charged an individual with burglarizing a building, and the evidence adduced at trial indicated that he had actually burglarized a booth, there's very little question in my mind that I should lose that case. The jury should almost certainly enter a judgment of acquittal. And if, for some reason, there was a miscarriage of justice at the trial level, then certainly the court of appeals, as they did in Skolaji, would look at that case and say, well, the government, or in this case the state, proved that he burglarized a tent. And while that is in the statute. Wouldn't that go to the credibility of the evidence rather than an element of the crime? Well, in Skolaji, the Missouri Court of Appeal specifically defined building. And in that case, the defendant, as it turned out, burglarized a semi-tractor. And the court went in and they said, basically, a semi-tractor trailer is not a building because it's not permanently affixed to the ground, there's not electricity run to it, and so on and so forth. And they assigned a very specific definition to what a building is. But here we're only talking about the statutorily listed locations, not one that's not listed. And I understand that. But my point is that if I charge building in this context, as Mr. Brown was charged with, that is an element. I have to prove that he burglarized a building. And that, at the very most basic level, makes it an element of the offense. Well, that seems to me to sort of assume the conclusion. I mean, I think the better reading, as Judge Graz is suggesting, is that there's a location element. In other words, you have to burglarize a particular location. And then there's a whole list of locations that would qualify from a building to a boat to a booth to a tent. But there needs to be one of those. The locational element needs to be satisfied by one of those things. Absolutely. But that location element is, in and of itself, an element. It is an element. But then there's five different ways to comply with that element, which makes them means. Well, there are certainly different means. But those means actually become elements once a charge is submitted to the judge or jury. But your authority for that is the speculation that if you put building in the complaint, that you have to prove a building. I'm not sure of the answer to that, if it turns out to be a booth. I don't know. It may well be that because there are means, if there are means, that it's okay for it to go to the jury and for there to be a guilty verdict because you've satisfied the locational element. I think State v. Scholage, he answers that question directly. Again, in that case, it was a semi-tractor trailer that was used as an office. It isn't speculative if State practice establishes. And that's your argument. It is. And I agree. And I agree with Your Honor that Shepard If all the prosecutors and all the courts understand that the proper way to focus the jury on the location element is to charge one. And, again, to be honest, looking back Then the element is the location charged. Looking back at the materials that I've developed over the years in this case, back in 2005, I would have never have guessed I would have appeared in 2019 arguing whether or not the burglary of a schoolhouse is actually a burglary. It's almost outlandish. Counsel, how do you explain, then, the model jury instructions, which give the alternative parenthetical locations to be You only get to pick one when you write up those jury instructions. You don't get to pick a boat, a house, a building. It's just one. And you're bound to prove that one. It's not an and-or, or they're in parentheticals because there are different ways to commit the crime. But you have to select, when you submit the case to a jury, which one you're proceeding on. Different ways to commit the crime is a means, not an element. Well, there are different ways to commit a crime. But only one of those, if only one of those is essential, then that is also an element. Meaning I can, you know, I can kill a person by any number of means. But I still need to prove that the person's dead. And, in fact, there are cases where there is an enhancement for the use of a firearm. And if I don't prove that it's a firearm, I don't get that enhancement. Well, Mathis didn't change the world that if the statute says anyone who burgles subpart A, one building, two tent, three trailer home, et cetera, et cetera, and the practice is to charge A1 or A2 or A3, that even though it's just a bunch of ors, it's the same substantive statute as if the ors weren't separated by subsection numbers. That's still a location element. Every case up to Mathis held that. And I don't think Mathis changed that. It just said there's ways of figuring out when you don't have anything as neat and clean as sub1, 2, 3, 4, and so forth, how you figure out you have the substantive equivalent of a divisible location element. Well, Mathis and the entire line of cases has always held an element as an element. It is something that necessarily needs to be proven to a jury. And that, in my mind, is the most simple way to determine whether or not this list becomes an element. And when you charge a building, you are obligated, as a prosecutor, to prove beyond a reasonable doubt that the person burglarized the building. And I don't think there's a way to get around that. I think in Naylor, it becomes slightly more confused because you have this inhabitable dwelling. And under a habitable dwelling... What ever happened to the rule? How does Mathis deal with it? But I understand the rule, and I didn't practice criminal law, but the prosecution charges in the conjunctive and proves in the disjunctive. I don't think Mathis truly addressed that. And certainly... I don't think they understood it. No. And I agree. Again, I am baffled about this line of cases that has come out. I share Judge Alito's and your concerns about the way this line of cases has taken a turn to take what is fundamentally a fairly easy issue and twist it in ways that I don't think anyone could ever imagine. I obviously read Your Honor's dissent. I read Judge Shepard's dissent. And I think Justice Alito's dissent in Mathis really gets to the heart of this issue. But I think in the context... I don't disagree, but you used the word dissent. Yes, that is true. That's the problem I have. And again, when we're dealing with the later... I think this statute is easier because you do have essentially a list. I think the problem with the later version of burglary is this inhabitable dwelling versus building. But don't all the means, elements, cases involve a list, at least the big ones? They do, but at least in terms of Naylor, you had a 1979 statute that has inhabitable dwelling, which can be satisfied in a billion different ways. Not a billion, but a substantial number of ways. And some of those structures are buildings. And so you have building or inhabitable structure, and the terms in many cases are completely interchangeable. Consequently, if, as a prosecutor as I was, you could charge inhabitable dwelling, and if on the property there was a building, a tent, and a railroad car, theoretically you could get to the jury by charging inhabitable dwelling. And so long as you proved one of the three, you're fine. But overlap, the fact that there's overlap, I mean they all involve lists, the fact that there's overlap has nothing to do with whether they're means or elements. As I read the Supreme Court's case law, the way you figure it out is, as Judge Loken mentioned, state practice, but also the structure and text of the statute and how it sets the elements or the different items. And again, I think the 1969 statute's easier. I think the way it's listed, as a matter of fact, the word building is actually set apart from the other sites by quite a number of phrases. So it does appear that even looking at the statute, that there were meant to be distinctive elements of the offense rather than simple means. It's a non-exhaustive list. You had to prove one, two, three, or four. The jury instructions indicate you have to prove one, two, three, or four. And in the case law dealing with these cases, the Missouri courts have said that you have to prove building, and if it's not a building, you lose. I see I only have a couple of minutes left, so I'd like to... One more question. Let's suppose it's not clear whether they're elements or means. How would you address the argument that you have to address the Taylor standard for the demand for certainty in order to prevail? And again, I'm going to defer to Judge Loken, but it would seem that Shepard, which dealt with this particular statute, is still good law. So, again, I have a problem just jumping over Shepard, kind of ignoring it, and getting to this kind of unusual conclusion that, you know, maybe math is dictated in Naylor, but I do think we're stuck with Shepard and Taylor, and those are Supreme Court precedents that I think demand that this particular statute does constitute, in this particular case, is generic burglary. And I do think that, and again, there's no question, legally or factually, that he was convicted of generic burglary, but I think, at least in terms of Naylor, he remains convicted of generic burglary for the purposes of burglary. Is it the position of the United States that Taylor controls this question? Because I don't understand the United States to have made that argument initially. Now, maybe you're making that argument now in light of some of the questions that were asked, but what's your best response to the fact that Taylor is or is not controlling? Taylor is controlling. Taylor, as Judge Loken pointed out, and I apologize for missing that, but it dealt with this exact statute. So, again, that was a massive oversight on my part, no question about it, but that is the controlling authority on this case. Looks like I'm out of time. I appreciate the Court's time. Thank you. Thank you. Mr. Goldberg, I'll give you a minute if you have something you want to add. Thank you, Your Honor. Go back to? Quickly, two points. The F3 timeliness issue, again, I go back to the scope of the remand, and it was remanded for reconsideration based on Naylor, and I don't think any other timeliness issues that are within the purview. Yeah, but on the remand order, that's a little different because, you know, I've been up there. I clerked at the Supreme Court, and sometimes when you send stuff back, you don't notice all the issues that weren't raised, and so I don't think they were directing us not to look to see if there are some other procedural defect in the petition. Fair enough, Your Honor. I'd also cite to the Fabian Jackson case. It was handed down by this Court a couple months ago, and I believe there's some language in there that says when you waive, when the government waives the issue, the F3 issue, that's the end of the story. But I would take a look at that case. The final issue is the MAI instruction. I didn't get to subsection 3. It says insert one of the following. That's a very strong indication that's not in that first locational means. For all those reasons, we respectfully submit this matter should be reversed and remanded. Thank you. Thank you, counsel. A recurring issue very effectively argued, and we'll take it under advisement.